IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.

TYLON COUSIN,

    *Defendant.*

Criminal No. 2:23-cr-137 - 1
Civil No. 2:25-cv-01115

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

The grand jury returned a three-count indictment against Tylon Cousin ("Cousin") charging him with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C) (Count One); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two); and felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) (Count Three). (ECF No. 3).[1]  Under the terms of his plea agreement, Cousin pled guilty on October 30, 2024, to Counts One and Two, accepted responsibility for the conduct charged in Count Three, and stipulated that he was responsible for 20 grams of cocaine. (ECF No. 45).  The United States Probation Office determined that Cousin's total offense level was 10 and that he fell into criminal history category III.  This resulted in an advisory guideline range of 70 to 76 months of

---

[1] Citations shall be to the record in the criminal case at Criminal No. 2:23-cr-137.

imprisonment.[2]  (ECF No. 49).  On February 26, 2025, the Court sentenced Cousin to a 70-month term of imprisonment consisting of 10 months at Count One and 60 months at Count Two, to be served consecutively.  This 70-month term of imprisonment is to be followed by a 6-year term of supervised release consisting of 6 years at Count One and 3 years at Count Two, to be served concurrently.  (ECF No. 62).

Cousin is currently serving his term of imprisonment at Milan FCI with an anticipated release date of February 28, 2030.  *See www.bop.gove/inmateloc/*.  On July 23, 2025, he filed a Motion to Vacate, Set Aside or Correct Sentence Pursuant to Section 2255, Title 28 of the United States Code ("§ 2255 Motion") claiming his counsel was ineffective.  (ECF No. 67).   First, he argues that his counsel was ineffective for failing to move for suppression of the evidence recovered during the search of his residence.  He believes that the affidavit of probable cause for the warrant should have been challenged.  (ECF No. 67, pp. 5-13).  Second, Cousin alleges that counsel failed to provide him with sufficient information concerning the nature of the charged offenses, particularly Count Two, to enable him to make an informed decision as to whether he should accept a plea offer or proceed to trial.  (*Id*. at 13-18).  Third, he faults counsel for failing to provide the Court with information about one of his convictions detailed in the presentence investigation report ("PSR").  (*Id*. at 4-5).  The record, supplemented by the Court's personal knowledge of this case having presided over it since the filing of the indictment, conclusively negates the factual predicates asserted by Cousin in support of his motion and establishes that he is not entitled to relief.   Because of this, the Court holds that an evidentiary hearing is

---

[2] The guideline range was 10 to 16 months of imprisonment for Count One, and an additional 60 months of imprisonment for Count Two.  The sentence imposed at Count Two had to be served consecutively to the sentence imposed at Count One.  *See* 18 U.S.C. § 924(c)(1)(D)(ii); *see also* U.S.S.G. § 5G1.2.  Thus, the guideline range was 70 to 76 months of imprisonment.

unwarranted. Cousin's motion will be denied for the following reasons, and a certificate of appealability will not issue.

## I.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence:

> [U]pon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). As a remedy, the court must "vacate and set the judgment aside and ... discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Gordon*, 979 F. Supp. 337, 339 (E.D. Pa. 1997) (citation omitted).

In reviewing a motion to vacate under § 2255, "[t]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (cleaned up). Where, as here, the petitioner files his motion *pro se*, the Court construes the pleadings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation[.]" *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). A district court is required to hold an evidentiary hearing on a motion to vacate sentence filed pursuant to § 2255, unless the motion, files, and records of the

3

case show conclusively that the movant is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Booth*, 432 F.3d at 545-46; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). Thus, if the record conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law, even if the factual predicates as alleged in the motion are true, an evidentiary hearing is not required. *See Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985).

The Court finds no need for an evidentiary hearing because, as will be explained below, the record conclusively establishes that Cousin is not entitled to relief.

## II.    ANALYSIS

Under the Sixth Amendment to the United States Constitution, a defendant has the right to effective assistance of counsel. A defendant relying on an allegation of ineffective assistance of counsel to support their request for relief under § 2255 bears the burden of establishing that counsel's performance was deficient. *Burt v. Titlow*, 571 U.S. 12, 23 (2013). "[T]he absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). To prove ineffective assistance of counsel, a defendant must establish both deficiency and prejudice:

> [first,] that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*United States v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). The United States Court of Appeals for the Third Circuit has explained:

As the Supreme Court has stated, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). On review, we "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). "In essence, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness' meaning 'reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). Regarding the interplay between *Strickland* and § 2255, if [a defendant] shows both elements of *Strickland*, he satisfies the requirements of § 2255. *See United States v. Rad–O–Lite of Phila., Inc.*, 612 F.2d 740, 744 (3d Cir. 1979) ("[P]ersons ... can attack a conviction for fundamental defects, such as ineffective assistance of counsel.").

*Id.* at 290.

### A. Ground One

Cousin's first allegation of ineffectiveness is that his counsel should have sought to suppress the evidence recovered during the search of his residence. He believes that the affidavit of probable cause for the warrant should have been challenged. (ECF No. 67, pp. 4-14). His claim is meritless.

The Fourth Amendment protects against "unreasonable searches and seizures" of "persons, houses, papers, and effects." U.S. Const. Amend. IV. "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is reasonableness.'" *Riley v. California*, 573 U.S. 373, 381-82 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)). Reasonableness "generally requires the obtaining of a judicial warrant." *Riley*, 573 U.S. at 382 (citation omitted). The warrant requirement ensures that a neutral and detached magistrate judge makes the decision on whether probable cause to support the search exists, rather than a police officer in the heat of an investigation. *Id.* To obtain a warrant, the

government must show probable cause that the location to be searched contains evidence of criminal activity. *United States v. Alexander*, 54 F.4th 162, 171 (3d Cir. 2022).

When faced with a challenge to a magistrate judge's probable cause determination, the Court's role is limited. The Court may not conduct a *de novo* review. Rather, it simply ensures that the issuing magistrate judge had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983); *United States v. Kepner*, 843 F.2d 755, 762 (3d Cir. 1988). This standard of review "does not mean that reviewing courts should simply rubber stamp [the issuing magistrate judge's] conclusions." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983). But it does mean that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965) (citation omitted). As articulated by the Third Circuit in *United States v. Miknevich*, 638 F.3d 178 (3d Cir. 2011):

> The principles governing a probable cause determination are well established. A magistrate may find probable cause when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. *Proof beyond a reasonable doubt is not required. Id.* at 235. Further, if a substantial basis exists to support the [issuing judge's] probable cause finding, we must uphold that finding even if a "different magistrate judge might have found the affidavit insufficient to support a warrant." *Conley*, 4 F.3d at 1205. The duty of a reviewing court is "simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Gates*, 462 U.S. at 238. We have held that "probable cause is a fluid concept" that turns on "the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006) (citing *Gates*, 462 U.S. at 232). The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner. *See United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997).

*Id.* at 182 (emphasis added); *see also United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) (stating that a finding of probable cause "does not require absolute certainty that evidence of

criminal activity will be found at a particular place, but rather that it is reasonable to assume that a search will uncover such evidence").

The affidavit clearly described that Cousin was a convicted drug trafficker with a 2012 federal conviction for possession with intent to distribute 50 grams or more of cocaine base. (ECF No. 71-1, p. 14).  It also stated that Cousin was convicted in the Commonwealth of Pennsylvania of possession of a small amount of marijuana in 2006, and use of drug paraphernalia in 2017.  (*Id.*).  The affidavit detailed how a drug trafficking investigation of Cousin commenced in late 2022.  (*Id.* at 15).  A reliable confidential source ("CI") with firsthand knowledge identified Cousin as an active drug dealer, and agreed to cooperate with law enforcement officers with their investigation.  (*Id.* at 15-16).  Two controlled buys using the CI were conducted.  For each one, law enforcement officers observed Cousin drive from his home to and from the controlled buys leading to the officers' reasonable conclusion that he kept illegal contraband in his home.  (*Id.* at 16-22).  The affidavit further outlined the habits of those engaged in drug trafficking, including that drug dealers oftentimes keep evidence of their drug trafficking activities in their homes.  (*Id.* at 8-14).

Despite the ample evidence constituting probable cause contained in the affidavit, Cousin claims that his counsel should have challenged the veracity, reliability, and basis of the CI's knowledge, as well as the CI's characterization of him as the source of cocaine in the Shenango Valley.  He also maintains that the affidavit failed to provide a nexus between his residence and the drug trafficking crimes being investigated because investigators did not personally see him sell drugs from his residence.  Cousin also claims that the affiant knowingly withheld information from the magisterial district judge. (ECF No. 67, pp 7-8).  The Court holds that these

purported deficiencies do not equate a lack of probable cause. Therefore, no ineffectiveness of counsel exists for failing to file a suppression motion.

The affiant confirmed the truth of the information supplied by the CI regarding Cousin's drug trafficking activities. The fact that the CI may have had a criminal record did not render him unreliable as the affiant attested that the CI regularly provided information to law enforcement officers that was against the CI's own penal interests. (ECF No. 71-1, p. 15). The affiant explained that the CI has "provided information and proactive cooperation that has resulted in the seizure of quantities of narcotics and U.S. currency, resulting in the arrest and conviction of multiple drug traffickers at both the State and Federal levels." (*Id.* at 16). It is not significant that the CI believed Cousin was a source of cocaine in the region, or that the CI was cooperating for monetary gain, as the CI's credibility regarding the drug trafficking activities of Cousin was established through the two controlled buys he made from Cousin. Even if the CI lied to the officers about some things, they were entitled to believe the CI and rely upon information they corroborated through their investigation in seeking a warrant. Nothing about the CI's information would have altered the magisterial district judge's probable cause determination.

Further, the Court finds Cousin's current contention – i.e., that he and the CI were "frequent drug users" and that the controlled buys constituted instances where Cousin was "simply sharing his personal stash" (ECF No. 67 at 9) – completely incredible. Not only is it unsubstantiated without any supporting evidence, but during his allocution at sentencing, Cousin accepted responsibility for his crimes and even offered an explanation for his drug trafficking activities: that he was working for an auto parts store as a delivery driver, got into an accident, was out of work and struggling financially because he was not receiving workers' compensation,

and that he needed money. When imposing sentence, the Court noted that it understood that Cousin lost his job and reverted to old habits to support himself, but that doing so evinced that he had not learned his lesson that drug trafficking is not a legitimate means of earning income. It is of note that Cousin has a history of trafficking cocaine. He was convicted federally in 2012 of possession with intent to distribute 50 grams or more of crack cocaine and received a 60-month term of imprisonment. The prior investigation revealed that, just as Cousin was doing in this case in 2023, he was dealing cocaine from his residence in Mercer County between 2009 and 2011. That prior investigation revealed that he was also armed while dealing cocaine, although he was acquitted of possessing a firearm in furtherance of a drug trafficking crime at the conclusion of a nonjury trial. (2:11-cr-00143-GLL, ECF No. 59, pp. 9-11). The evidence recovered during the search of Cousin's home in this case (firearms, the cutting agent, and scales), are indicative of drug trafficking, not drug use. Moreover, the PSR documented no history of cocaine abuse. Cousin smoked marijuana daily and had a medical marijuana card. He reported that he used opiates such as Vicodin and Percocet, but primarily for back pain, not to get high. (ECF No. 49, p. 18). Cousin offers only unsubstantiated allegations as to his and the CI's alleged drug use, which would not have impacted the magisterial district judge's probable cause determination given the fact that the investigation included two controlled buys from Cousin.

As to Cousin's belief that the affidavit was deficient because it failed to provide direct evidence of drug trafficking at his residence, it matters not as the affidavit provided for the reasonable inference that he stored drugs and contraband of his drug trafficking activities at his residence. "[D]irect evidence linking the place to be searched to the crime is not required for the issuance of a search warrant[,]" and "probable cause can be, and often is, inferred by considering

9

the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where the criminal might hide the fruits of his crime." *United States v. Harris*, 884 F. Supp. 2d 383, 393 (W.D. Pa. 2012) (quoting *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001)). "When the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there." *United States v. Stearn*, 597 F.3d 540, 558 (3d Cir. 2010). The Third Circuit has "recognized that 'evidence associated with drug dealing needs to be stored somewhere, and ... a dealer will have the opportunity to conceal it in his home. After all, a dealer could logically conclude that his residence is the best, and probably the only, location to store items such as records[,] ... cash, ... guns, ... and large quantities of drugs to be sold.'" *Id.* at 558. The Third Circuit has reaffirmed the "reasonable inference ... that drug dealers often store evidence of drug crimes in their residences," but has held that "application of this inference is based on evidence supporting three preliminary premises: (1) that the person suspected of drug dealing is actually a drug dealer; (2) that the place to be searched is possessed by, or the domicile of, the dealer; and (3) that the home contains contraband linking it to the dealer's activities." *Id.* at 559 (quoting *United States v. Burton*, 288 F.3d 91, 104 (3d Cir. 2002)). With respect to the third premise, i.e. the nexus between a defendant's drug trafficking activity and their home, the Third Circuit has explained:

> Our case law . . . suggests many factors that help establish the required nexus between a defendant's drug-dealing activities and his home. These include: large-scale operations, a defendant's attempts to evade officers' questions about his address, the conclusions of experienced officers "regarding where evidence of a crime is likely to be found," the proximity of the defendant's residence to the location of criminal activity, probable cause to arrest the defendant on drug-related charges, and the tip of a "concerned citizen" that a specific stolen item would be found in the defendant's residence.... [T]hese factors are not requirements. Nor are these factors exhaustive.

*Stearn*, 597 F.3d at 559–60 (footnotes and citations omitted).   Courts have also found that the fact that a drug dealer returned to his or her home directly after a drug deal supports an inference that the home contains contraband linking it to the dealer's trafficking activities.   *See Burton*, 288 F.3d at 104 ("Of course, Burton's travel from Darien Street to North Garnet Street does not simply support the inference that Burton's home was on that street, but tellingly indicates that his home was the destination for the illegal proceeds of his drug transaction. While we generally accept the common sense proposition that drug dealers often keep evidence of their transactions at home … that inference is much stronger when the home is the first place a drug dealer proceeds following such a transaction."); *see also United States v. Suarez-Arzon*, 664 F. App'x 180, 183 (3d Cir. 2016) ("Moreover, law enforcement observed instances of suspicious behavior, including Herrera conducting what appeared to be a drug transaction and immediately returning to 2232 Tyson Street.").

Here, because the affidavit set forth several facts supporting that Cousin was trafficking drugs from his home and vehicle, including going to the transactions from his home and returning home immediately thereafter, it was reasonable for the magisterial district judge to find probable cause existed that Cousin may possess contraband in those locations. Therefore, law enforcement's reliance on the search warrant was in good faith.[3]

For all of these reasons, no ineffectiveness flows from counsel's alleged failure to file a suppression motion challenging the affidavit.   *United States v. Sanders*, 165 F.3d 248, 253 (3d

---

[3] The good faith exception precludes suppressing evidence "where officers act in 'good faith' or 'objectively reasonable reliance' on a search warrant later held to be defective." *United States v. Caesar*, 2 F.4th 160, 169 (3d Cir. 2021) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The existence of "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search," *United States v. Zimmerman*, 277 F.3d 426, 436 (3d Cir. 2002) (internal quotation marks omitted), and typically "will obviate the need for any deep inquiry into [the] reasonableness of the officer's reliance on the warrant," *Caesar*, 2 F.4th at 170 (alteration in original) (internal quotation marks omitted).

Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

### B. Ground Two

Cousin argues that he entered a guilty plea because his counsel informed him that the proximity of the guns to the drugs was "sufficient to show that the firearm was used in furtherance of a drug trafficking crime." (ECF No. 67, p. 13). Cousin was convicted under 18 U.S.C. § 924(c), which makes it a crime to possess a firearm in furtherance of a drug trafficking crime. The elements supporting a conviction for the crime are: "(1) the defendant committed the underlying drug trafficking crime; (2) the defendant knowingly possessed a firearm; and (3) the possession was in furtherance of the underlying drug trafficking crime." *United States v. Bobb*, 471 F.3d 491, 496 (3d Cir. 2006). Cousin now claims that the firearms were merely present in his residence, and the evidence was insufficient to show they were possessed in furtherance of a drug trafficking crime.

"[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Lee v. United States*, 582 U.S. 357, 364 (2017) (citation omitted). A defendant "must convince the court that a decision to reject a plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 528 U.S. at 369.

Cousin fails to demonstrate either *Strickland* prong with respect to his claim. At the plea hearing, Cousin testified under oath that he reviewed the charges against him and the plea agreement with counsel prior to changing his plea. Cousin also indicated that nothing besides what was in the agreement was promised to him, that he understood the agreement, that he was pleading guilty under his own free will, and that his sentence on the two counts would be consecutive. Cousin was informed of the sentencing exposure on the two charges. After being informed of the elements of each offense and the facts the Government would offer to meet those elements at trial, Cousin testified that those facts were true and he pled guilty to both offenses. He agreed that the elements the Government had to prove with regard to the § 924(c)(2) offense were that he knowingly possessed a firearm, and that he possessed it in furtherance of a drug trafficking crime. The facts, as stated by the Government were:

> During the three weeks leading up to February 3rd, 2023, the Mercer County drug task force, with the assistance of a confidential informant, made three controlled buys of cocaine directly from Mr. Cousin in Mercer County. Mr. Cousin was observed leaving from his residence prior to each controlled buy. His residence is located a 124 Shenango Boulevard in Farrell, Pennsylvania.
>
> On February 3rd, 2023, at about 6:10 a.m., a search warrant was [executed] at Mr. Cousin's residence. He was inside the residence with his girlfriend at that time. No one else was inside the residence at that time.
>
> Law enforcement agents located twenty (20) grams of cocaine in the kitchen of the residence. A digital scale, with cocaine residue on it, was on the kitchen counter, along with a box of plastic sandwich baggies. The cocaine was found in the top drawer of the cabinet directly underneath the scale. A container of Inositol powder, commonly used to cut cocaine, was on a shelf in a kitchen cabinet.
>
> A loaded Jennings pistol … was found on the couch in the living room, and a loaded Glock pistol … was found in a bag behind the couch in the living room. Additional bags behind the couch containing 50-round drum magazine matching the caliber of the Glock pistol, an extended magazine matching the caliber of the Glock pistol, additional ammunition matching the caliber of the Glock pistol, and another digital scale.
>
> Items containing [Mr. Cousin's] name on them were found at various places in the residence. One of the items was his driver's license with 124 Shenango Boulevard in Farrell listed as his address. After being advised of his

Miranda rights Mr. Cousin admitted, orally and in writing, that the drugs and guns were his.

(ECF No. 49, pp. 6-7). Not only did Cousin orally admit that he possessed the firearms in furtherance of drug trafficking, but he signed a change of plea form. As part of his plea agreement, he also accepted responsibility for the conduct charged at Count Three of the indictment, felon in possession of a firearm in violation of § 922(g)(1). (ECF No. 43). He also consented to forfeit ownership of the firearms and ammunition at his plea hearing.

Whether Cousin's possession of the firearms was in furtherance of drug trafficking activities is a sufficiency of the evidence question. In *United States v. Sparrow*, 371 F.3d 851 (3d Cir. 2004), the Third Circuit noted that, "[u]nder § 924(c), the 'mere presence' of a gun is not enough." *Id.* at 853. Instead, "the evidence must demonstrate that possession of the firearm advanced or helped forward a drug trafficking crime." *Id.* It adopted the following eight factors enumerated by the Court of Appeals for the Fifth Circuit in *United States v. Ceballos-Torres*, 218 F.3d 409 (5th Cir. 2000), that are relevant in determining whether a firearm advanced or helped forward a drug trafficking crime: the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found. *Sparrow*, 371 F.3d at 853 (citing *Ceballos-Torres*, 218 F.3d at 414–15). The Third Circuit emphasized that these factors are "nonexclusive" and are not "legal requirement[s] for a § 924(c) conviction." *Sparrow*, 371 F.3d at 853. No one factor is required, and a finding of guilt may be made despite the absence of one or more factors. *See, e.g., United States v. Bobb*, 471 F.3d 491, 496–97 (3d Cir. 2006) (finding that when "many" of the *Sparrow* factors were fulfilled, there existed a "nexus between the possession of the gun and the drug trafficking" and "a rational trier of fact could reasonably

14

find that Mr. Bobb's possession of the firearm furthered, advanced or facilitated his drug trafficking activities").

In this case, many of the *Sparrow* factors were satisfied. First, Cousin pled guilty to the drug trafficking offense charged in Count One, and he is not contesting his conviction as to that count. Furthermore, Cousin admitted under oath in open court that the Government's recitation of the facts was correct and fairly summarized. The Government stated that its evidence established that Cousin regularly accessed the residence during the surveillance before his arrest and search. When executing the search warrant at his residence, law enforcement agents located a digital scale and a box of plastic sandwich baggies on the counter. They found 20 grams of cocaine in the cabinet directly underneath the scale. Inositol powder was also recovered from a shelf in the cabinet. A loaded pistol was found on a couch in the living room. Another loaded pistol was found in a bag behind the couch in the living room. From that same area, law enforcement also recovered a drum magazine, an extended magazine, additional ammunition, and another digital scale. After being advised of his *Miranda* rights, Cousin admitted, orally and in writing, that the drugs and guns were his. (ECF No. 49, pp, 6-7). The firearms were strategically located so as to be immediately available for Cousin's protection whenever he retrieved drugs from the kitchen. It is reasonable to assume the firearms were possessed in furtherance of Cousin's drug activities.[4] Sufficient evidence exists to support Cousin's § 924(c) conviction. As such, Cousin's counsel's advice to plead guilty to Count Two was objectively reasonable and does not constitute ineffective assistance of counsel.

---

[4] Cousin's argument that he possessed the gun merely to protect his home is not compelling as the Court may infer that the reason the home needed protection was because of the drugs it contained.

Cousin has not shown either that his counsel's performance fell below an objective standard of reasonableness or that there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. Thus, under the circumstances, Cousin's claim that he was forced by counsel to accept the plea agreement is without merit.

## C. Ground Three

Like the Government, the Court cannot ascertain whether Cousin is alleging a distinct claim of ineffective assistance in connection with his sentence. He offers no insight in his reply as to his exact issue. Regardless, the Court finds no ineffectiveness on the part of counsel relative to sentencing.

Counsel made a number of clarifications to Paragraphs 52, 61, and 69 of the PSR that the Court accepted. (ECF No. 57, p. 2). The Court refused to grant Cousin a downward departure under U.S.S.G. § 4A1.3(b) as it found that his criminal history was not overrepresented. (*Id.* at 2-4). The Court held the following regarding other defense objections to the PSR:

> Cousin objects to the factual statements contained in Paragraphs 35-39 and 44 of the PSR because the "narratives in those paragraphs reflect summaries of police reports and affidavits, which contain untested and unreliable allegations beyond those that were required to be admitted by Mr. Cousin in any prior plea or proven at any trial." (ECF No. 52, p. 3). Cousin simply wants the Court to note his position. He does not offer any information about what is actually incorrect in these paragraphs. (*Id.*). Significantly, Cousin acknowledges that his prior criminal history has been accurately reported. The Court will not strike Paragraphs 35-39 and 44. It will give the information contained therein the weight it is due under Rule 32 of the Federal Rules of Criminal Procedure and 18 U.S.C. §§ 3553 and 3661. IT IS HEREBY ORDERED that Cousin's objections to Paragraphs 35-39 and 44 of the PSR are OVERRULED.
> Cousin also objects to the Court considering the arrests outlined in Paragraphs 44-46 of the PSR. (*Id.* at pp. 4-5). The information in these paragraphs relates to the history and characteristics of Cousin. The Court understands that the arrests did not result in a conviction, and that they have no bearing on Cousin's criminal history category. Paragraphs 44-46 will not affect the Court's sentencing of Cousin. IT IS HEREBY ORDERED that Cousin's objections to Paragraphs 44-46 are OVERRULED.

(*Id*. at 2).

To the best of the Court's understanding, Cousin is faulting his counsel for not providing more information about one of his past convictions contained in paragraph 39 of the PSR. As to that conviction, while still on federal supervised release, Cousin was charged on April 20, 2017, with possession of drug paraphernalia at CP 1049-2017 in the Mercer County Court of Common Pleas, Pennsylvania, after police found him asleep behind the wheel of his car. On May 30, 2017, Cousin entered a guilty plea and received one year of probation. The Court noted that the conviction was neither stale nor trivial, and it illustrated "that Cousin was not deterred from engaging in criminal activity involving illegal drugs despite having been punished in the past and being under court supervision." (*Id*. at 3).

According to Cousin, his counsel should have pointed out that what occurred was the result of his drug addiction. (ECF No. 67, p. 5). The Court was well aware of the factual circumstances that led to the 2017 conviction. The PSR notes that officers, "smelled a strong odor of marijuana on him and coming from the car" and that Cousin "stumbled and was unsteady on this feet." (ECF No. 49, ¶ 39). The officers initially arrested Cousin on the grounds of "suspected public intoxication." (*Id*.). Furthermore, the PSR contained information that Cousin had "a history of chronic marijuana use" that entailed "smoking marijuana daily." (*Id*. at 64). It noted that in 2015 and 2016 Cousin had been referred for "substance abuse" evaluations and that he attended "outpatient substance abuse treatment" between August 2016 and March 2017. (*Id*. at 67-68). The Court also knew he took opiates for back pain. (*Id*. at 65).

Cousin has failed to set forth how counsel's alleged inaction prejudiced him. A petitioner asserting ineffective assistance of counsel at sentencing must show that but for defense counsel's

"alleged ineffectiveness, he would have likely received a lower sentence." *United States v. Booth*, 432 F.3d 542, 546-47 (3d Cir. 2005); *See also United States v. Dobbin*, 147 F.4th 333, at 340 (3d Cir. 2025). Any suggestion by Cousin that the Court would have imposed a different sentence is pure speculation. The material supplied in the PSR was more than ample as to the facts underlying Cousin's 2017 conviction and his substance abuse issues. Any further information from counsel would not have influenced the Court's decision. The Court rejected Cousin's request for a downward variance and advised Cousin that it would have adhered to the sentence imposed even if it did not accurately compute the guideline range. The Court's sentence was based on a consideration of all of the 18 U.S.C. § 3553 sentencing factors, and not just Cousin's criminal history and drug use. Cousin simply cannot show a reasonable probability that he would have received a lower sentence.

### D. No certificate of appealability shall issue

In order to pursue an appeal from a final order in a § 2255 proceeding, a petitioner must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A court should issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. 2253(c)(2). A petitioner meets this burden by showing that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

No certificate of appealability will issue. The Court finds that jurists of reason would not find it debatable that Cousin has not made a substantial showing of the denial of a constitutional right. He does not present any claims upon which habeas relief may be granted.

### III.    CONCLUSION

For the foregoing reasons of law and fact, Cousin's motion will be denied by Order of

Court to follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_12/3/2025_____
Dated